UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>        v.<br>RANDY READ, individually and as Trustee of the<br>BERGIN-READ SPRAY TRUST,<br>    Defendant. | No. 3:14-cv-344 (MPS) |

### MEMORANDUM OF DECISION

The United States of America has sued Randy Read, individually and as a trustee of the Bergin-Read Spray Trust under 31 U.S.C. § 3713(b) because the United States contends that Read made payments from an insolvent trust that had an outstanding tax liability. The United States has moved for summary judgment and seeks $175,042.16 plus prejudgment interest. Read has not made any filings in opposition to the plaintiff's motion for summary judgment. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 29) is GRANTED.

**I.    Background**

In 1999, Read established a trust for his children with stock options that his wife had earned. (ECF No. 29-4 at 7–8; ECF No. 29-5 at 2.) Bank records show that in 1999, the trust was worth over $700,000. (ECF No. 29-8 at 1.) In 2000, the trust filed a request for an extension of time to file its return; the request showed that the trust had a tax liability of $121,707.00. (ECF No. 29-7 at 1.) Read was aware of the tax liability in April of 2001. (ECF No. 29-4 at 11.)

On April 30, 2001 the trust had assets worth $225,170.80. (ECF No. 29-8 at 1.) On June 29, 2001, the trust's value was $162,869.27. (*Id.* at 75.) Between July 5, 2001 and July 30, 2001, Read made four payments to Fairfield County Carpenters totaling $25,000 for home renovations. (*Id.* at 101; ECF No. 29-4 at 19.) On July 31, 2001, Read disbursed $25,000 from the trust fund to himself, bringing the trust's value to $108,390.02. (*Id.*) IRS records reveal that the trust's tax

liability was at least $121,749.00, which meant that Read's July 31, 2001 disbursement decreased the trust's value to a level below its tax liability. (*See* ECF No. 29-10 at 2 (noting an initial assessment of $122,511 on August 21, 2001 and a $762.00 credit on April 15, 2001, which suggests a total liability of at least $121,749.00.) From July 2001 to January 2010, although the trust's value never exceeded its tax liability, market gains and dividends allowed Read to disburse at least another $197,771.35, including the $25,000 disbursement on July 31, 2001. (*See* ECF No. 29-1 at 4 (compiling Read's payments with citations to the trust's bank statements); ECF No. 29-8 *passim*.) Read spent some of the money to renovate his house, to invest in real estate, to pay for his children's private preschool education, and to send the children to summer camp. (ECF No. 29-4 at 17–25.) Read also wrote about $80,000 in checks directly to himself. (*See* ECF No. 29-1 at 4.)

## II.     Legal Standard on Summary Judgment

Summary Judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted).

On summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

### III.     The Defendant's Liability Under 31 U.S.C. § 3713

An insolvent person who is indebted to the United States must first pay the claims of the United States before voluntarily assigning property to others. 31 U.S.C. § 3713(a)(1)(A)(i). "A representative of [an insolvent] person or an [insolvent] estate (except a trustee acting under [the Bankruptcy Code]) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b); *U.S. v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996). Courts liberally construe the term "debt" to include "a distribution of funds that is not, strictly speaking, the payment of a debt." *Want v. C.I.R.*, 280 F.2d 777, 783 (2d Cir. 1960); *Coppola*, 85 F.3d at 1020. A trustee outside the bankruptcy context can be held liable under § 3713(b). *See Want*, 280 F.2d at 782–83 ("Clearly [the trustee] would be personally liable . . . ."). Thus, Read is personally liable if, as a trustee, he distributed assets of the trust while the trust was insolvent and he knew or had "notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt" owed to the United States. *Coppolla*, 85 F.3d at 1020.

The plaintiff has presented evidence, which the defendant has not attempted to refute, to establish the defendant's liability. First, Read was a trustee of the Bergin-Read Spray Trust. (ECF No. 29-5 at 2.) According to Read, he was the only person to have check-signing authority for the trust, the assets of which were held at Merrill Lynch. (ECF No. 29-4 at 11–12.) Second, by April 15, 2001, Read was aware of the trust's tax liability. (ECF No. 29-4 at 11.) Third, Read rendered the trust insolvent when he transferred $25,000 to himself on July 31, 2001 because the

3

transfer reduced the trust's assets to $108,390.02 while its tax liability was at least $121,749.00. (ECF No. 29-8 at 89, 101; ECF No. 29-10 at 2); *U.S. v. Renda*, 709 F.3d 472, 479 n.6 (5th Cir. 2013) (an entity is "insolvent" if its liabilities exceed it assets). Therefore, Read is liable under 31 U.S.C. § 3713(b).

The remaining issue is the amount of Read's liability. A trustee is liable for distributions "to the extent of the payment for unpaid claims" if a "reasonably prudent person" would have inquired "as to the existence of the debt owed." 31 U.S.C. § 3713(b); *Want*, 280 F.2d at 783 ("[A] fiduciary is liable only if it had notice of the claim of the United States before making the distribution."); *Coppola*, 85 F.3d at 1020 ("In order for liability to attach, the executor must have knowledge of the debt owed by the estate to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment."). A reasonably prudent person would have inquired into the trust's tax liability and whether the trust's failure to pay would incur nonpayment penalties.

Read, therefore, can be held liable for up to the entire amount of the debt owed by the trust, which nonpayment penalties increased to $213,220.21 by November 2011, (ECF No. 29-10 at 9).[1] Read disbursed $197,771.35 while the trust was insolvent and indebted to the United States. (*See* ECF No. 29-1 at 4 (compiling Read's payments with citations to the trust's bank statements); ECF No. 29-4 at 21–23; ECF No. 29-8 *passim*.) The United States represents that it has already collected $22,729.19 from Read. (ECF No. 29-12 at 5.) Therefore, Read is liable in the amount of $175,042.16, which Read does not dispute. (ECF No. 29-12 at 4.)

---

[1] The United States says that the outstanding debt was $231,826.87 as of July 1, 2015. (ECF No. 29-12 at 5.)

IV. **The Plaintiff's Request for Prejudgment Interest**

The United States asks for prejudgment interest. District Courts have broad discretion to grant prejudgment interest based on "'considerations of fairness' rather than 'a rigid theory of compensation.'" *S.E.C. v. Contorinis*, 743 F.3d 296, 207–08 (2d Cir. 2014) (quoting *Blau v. Lehman*, 368 U.S. 403, 414 (1962)). Courts consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Broth. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833–34 (2d Cir. 1992).

Of the cases that cite 31 U.S.C. § 3713 and discuss prejudgment interest, most decline to award it. The United States District Court for the District of Massachusetts without comment declined to award prejudgment interest against an executrix who distributed an estate's assets before paying its federal tax liability. *United States v. Estate of Reitano,* No. CIV.A. 12-11944-RWZ, 2014 WL 4384486, at *1–*3 (D. Mass. Sept. 4, 2014). The United States District Court for the Southern District of Alabama, "[i]n the absence of [an authority or] cogent explanation why the Court's discretion should be exercised in favor of making such an award," declined to award prejudgment interest merely because the plaintiff had established the defendant co-executors' liability under § 3713(b). *United States v. Irby*, No. CIV.A.04-0762-WS-M, 2005 WL 3536345, at *6 (S.D. Ala. Dec. 21, 2005). Similarly, the United States Tax Court held that to assess prejudgment interest against an executor, as opposed to a transferee, would be improper because to "require an executor . . . to be subject to the interest on funds he did not have the benefit of enjoying would constitute a punitive act for which there is no legal authority." *Singleton v. C.I.R.*, 71 T.C.M. (CCH) 3127 (T.C. 1996).

In contrast, one court has held that prejudgment interest was appropriate where the Department of Housing and Urban Development sued a corporation, its directors, and shareholders for breaching a government security instrument called a "Regulatory Agreement." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1099, 1111 (D. Del. 1988).

Courts liberally interpret 31 U.S.C. § 3713 "[i]n recognition of the federal insolvency statute's broad purpose of securing adequate revenue for the United States Treasure." *Coppola*, 85 F.3d at 1020. In the present case, the United States offers a persuasive explanation to support its request for prejudgment interest. *Cf. Irby*, 2005 WL at *6 (noting the "absence of cogent explanation" in favor of a prejudgment interest award); (ECF No. 29-12 at 5–6). First, the need to fully compensate the wronged party for its damages weighs in favor of prejudgment interest. Reed's liability in the amount of $175,042.16 will not make the United States whole because Reed exhausted the assets of the trust, the liability of which exceeds $200,000. (ECF No. 29-10 at 9; ECF No. 29-4 at 31.) Second, considerations of fairness weigh in favor of awarding prejudgment interest. Unlike the executor in *Singleton*, Read was the self-dealing transferee of some of the trust's distributions; rather than advance the common good, Reed enriched himself and his family at the public's expense. Third, the remedial purpose of the statute weighs in favor of prejudgment interest. The purpose of 31 U.S.C. § 3713 is to "secure adequate revenue" for the United States. *Coppola*, 85 F.3d at 1020. It does this by preventing trustees like Reed from depleting a trust to make it judgment proof to evade the trust's tax liability. By forcing the United States to bring this action instead of paying the tax, Reed has deprived the public "of the benefit of having the money at the time it was due, rather than after [several] years of negotiation and litigation." *Golden Acres, Inc.*, 702 F. Supp. at 1111. Here, an award of prejudgment interest

"is entirely consistent with the requirement that [31 U.S.C. § 3713] be liberally construed in order to effectuate its purpose . . . ." *Id.*

**V.     Conclusion**

The Motion for Summary Judgment (ECF No. 29) is GRANTED. The defendant is liable under 31 U.S.C. § 3713(b) in the amount of $175,042.16. In addition, the Court will award prejudgment interest from the date of each preferential payment, subject to the filing of a motion for prejudgment interest by **February 16, 2016**, in which the plaintiff shall propose a prejudgment interest calculation setting forth the dates from which prejudgment interest should be calculated and the interest rate used.

                               IT IS SO ORDERED.

                               /s/
                               Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
              January 26, 2016